**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| TIFFANY LAURA,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | **Case No.** 1:20-cv-01573<br><br>Honorable Sharon Johnson Coleman |
|---|---|

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGEMENT**

Plaintiff Tiffany Laura ("Plaintiff"), by and through the undersigned counsel, respectfully submits her Memorandum of Law in Support of her Motion for Partial Summary Judgement ("Motion") against Defendant Experian Information Solutions, Inc. ("Defendant" or "Experian").

## I. INTRODUCTION

In February 2020, Plaintiff discovered that Experian inserted a collection account tradeline into her credit file, inaccurately reporting that Plaintiff owed almost four hundred dollars in delinquent, unpaid debt to a collection agency—even though this debt was indisputably discharged by her bankruptcy several months earlier. Experian's inaccurate reporting caused creditors to deny Plaintiff credit on multiple occasions, including an auto loan. Plaintiff commenced this action against Experian, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b).

Under 15 U.S.C. § 1681e(b), consumer reporting agencies ("CRAs") like Experian are required to follow reasonable procedures to assure maximum possible accuracy of the information contained in consumer reports published to third parties. Plaintiff now moves for judgment that Experian violated the FCRA as a matter of law. Undisputed facts show that Experian unreasonably ignored material information regarding the "open dates" of collection accounts provided by furnishers, resulting in substantial and harmful errors being introduced into Plaintiff's consumer reports, despite Experian possessing independent knowledge of both the significance and the proper application of open date information, as well as having prior notice that its procedures systematically result in avoidable inaccuracies.

Accordingly, Plaintiff respectfully requests partial summary judgement to be entered against Experian based on Experian's failure to follow reasonable procedures, and subsequent reporting of inaccurate information.

## II. LEGAL STANDARD

"Summary judgement is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law.'"

*Gillespie v. Equifax Info. Servs., LLC,* 484 F.3d 938, 940 (7th Cir. 2007) (Fed. R. Civ. P. 56(c)).

The court draws all inferences in the light most favorable to the non-moving party and the moving party must discharge its burden of showing that there are no genuine questions of material fact and that he is entitled to judgment as a matter of law. *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015) (citing *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014)).

"Material facts are those that 'might affect the outcome of the suit' under the applicable substantive law." *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 607 (7th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)).

"The mere existence of **some** alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement; the requirement is that there be no genuine issue of material fact." *Ruffin-Thompkins*, 484 F.3d 938, 940.

## III. FACTUAL BACKGROUND

### A. Plaintiff's Bankruptcy and Experian's Reporting

Between March 5, 2019 and June 7, 2019, Plaintiff received service and incurred a debt with Peoples Gas, a utility company. *See* LR 56.1(a)(2) Statement of Material Facts ("SMF") at ¶ 1. However, in late June 2019, Plaintiff became insolvent and filed a voluntary petition for Chapter 7 bankruptcy. *Id.* at ¶ 3. On September 26, 2019, following Plaintiff's bankruptcy filing, but **before** Plaintiff received an order of discharge, Peoples Gas placed Plaintiff's account (the "Account") with Midwest Receivable Solutions ("Midwest") for collection. *Id*. at ¶ 2. Plaintiff's bankruptcy was subsequently discharged on October 8, 2019. *Id*. at ¶ 4.

On February 21, 2020, Plaintiff obtained consumer disclosures containing her credit information from Experian and non-parties Equifax Information Services, LLC ("Equifax") and Trans Union LLC ("Trans Union"). *See* SMF at ¶ 5. Even though the Account (debt) was indisputably discharged, Experian inexplicably reported the Account as past due and owing on

Plaintiff's consumer disclosure. *Id*. at ¶ 6. The disclosure from Experian inaccurately stated that the Account was a Collection account with an outstanding balance of $370 as of February 2020. *Id*. The disclosure also inaccurately reported that the entire outstanding balance was past due and delinquent. *Id*. Experian did not state anywhere in the disclosure or in any way that the Account had been discharged in bankruptcy. *Id*. at ¶ 7. By contrast, Equifax, and Trans Union accurately reported that the Account was discharged in bankruptcy, with no outstanding balance. *Id*. at ¶ 10.

Experian knew the Account was discharged, but nevertheless inaccurately reported the Account. Experian included elsewhere on Plaintiff's disclosure that Plaintiff filed for bankruptcy in June 2019 and received a bankruptcy discharge in October 2019. Experian also reported that Plaintiff's other pre-bankruptcy debts were discharged, except for the Account, which Experian reported as in collections and delinquent. *Id*. at ¶¶ 8, 9.

The Account appeared in Plaintiff's Experian credit file from February 11, 2020, through March 19, 2020. *Id*. at ¶ 11. During that time, there were seven hard inquiries by creditors into Plaintiff's credit file. *Id*. at ¶ 40. According to Experian, a "hard inquiry" is a request by a creditor to see information about a consumer in connection to a consumer-initiated action or process such as an application for credit. *Id*. at ¶ 41.

One of those hard inquiries was from Capital One Auto Finance ("Capital One"), on March 11, 2020. *Id.* at ¶ 42. About seven days later, Capital One delivered a letter to Plaintiff dated March 18, 2020. *Id.* at ¶ 48. The letter references a credit application dated March 11, 2020, the date of Capital One's hard inquiry. *Id*. The letter informed Plaintiff her auto finance application was denied. *Id*. Capital One stated the application was denied because "[t]here are too many delinquent past or present credit obligations" and that "[c]redit bureau information is missing or unavailable." *Id*. at ¶ 49. The letter further stated that the decision to deny Plaintiff auto financing was "based in

whole or in part on information obtained in a report from the consumer reporting agency listed below." Experian is listed along with Trans Union and Equifax. *Id*. at ¶ 50. The letter also contained a section entitled "Your Credit Score," and the number "461" along with "Source: Experian" and "Date: 3/11/2020." *Id.* at ¶ 51. No other numbers, sources, or dates are listed. *Id*.

Consequently, Plaintiff was denied credit, and she also suffered consequent emotional and mental pain, stress, frustration, and anxiety, as she described at her deposition. *Id*. at ¶¶ 52, 53.

**B. Experian's Reporting Procedures**

Experian receives daily notice of discharges of consumer bankruptcies from LexisNexis Risk & Information Analytics Group, Inc. ("LexisNexis"). *Id.* at ¶ 12. After Experian receives notice that a consumer has received a bankruptcy discharge, it initiates a procedure known as a "scrub," which is designed to automatically update Experian's records to reflect the effect of the discharge on a consumer's debts. *Id.* at ¶ 13. Experian conducts scrubs on its records weekly. *Id.* at ¶ 14. The scrub is applied only to certain accounts that match a predetermined list of criteria determined by Experian. *Id*. at ¶ 15. Between February 11 and March 19 of 2020, the scrub only applied to accounts that had an open date prior to the filing date of the bankruptcy, were 91 days or more delinquent at the time of the scrub and were not in a "finalized status." *Id*. Experian claims it does not maintain a list of all "finalized" statuses, but has identified statuses of paid, settled or refinanced as examples of finalized statuses. *Id*. at ¶ 17. A status of in collection is not a finalized status for purposes of the bankruptcy scrub, even though collection accounts are known and considered by Experian to be accounts that are over 91 days delinquent. *Id*. at ¶¶ 18.

During 2019 and 2020, Experian ran bankruptcy scrubs on a consumer's credit file every other month for an 18-month period after the first scrub. These subsequent scrubs are known as "look-back scrubs." *Id*. at ¶¶ 19, 20.

On or about October 9, 2019, Lexis informed Experian Plaintiff's Chapter 7 bankruptcy was discharged. Shortly thereafter, Experian initiated its scrub procedure on Plaintiff's credit file. *Id.* at ¶ 30. The Account was not yet present in Plaintiff's credit file. Midwest first provided information about the Account to Experian on February 11, 2020, and specifically notified Experian the delinquency preceded the open date of the collection account. *Id*. at ¶¶ 31, 32. Midwest informed Experian the collection account was opened in September 2019. *Id*. at ¶ 31. However, Midwest also simultaneously notified Experian the Account first became delinquent June 7, 2019, which Experian knew was **before** Plaintiff filed bankruptcy, and before the reported open date by Midwest. *Id.* at ¶ 32. Nevertheless, Experian reported the Midwest collection account information anyway despite specific notice the delinquency predated the bankruptcy, *id.* at ¶ 31, and despite Experian's admission that Midwest is a less reliable furnisher. *Id.* at ¶ 34.

When Experian performed its look-back scrubs between February 11 and March 19 of 2020, Experian failed to update the Account to reflect a status of discharged in bankruptcy, or zero-dollar balance to reflect the Account was discharged. *Id*. at ¶ 35. The Account was only removed from Plaintiff's credit after another CRA notified Experian that it deleted the tradeline. *Id.* at ¶¶ 36-39.

As noted, Experian's bankruptcy scrub updates tradelines based on certain criteria, one of which being the account's open date, *i.e.*, when the account is originally opened. *Id*. at ¶¶ 15, 23. However, the open date furnishers provide to Experian is materially different (as is the case here) from when the true open date (i.e., when the account is originally opened/the is debt incurred by consumer) where, as here, the furnisher is a collection agency. *Id*. at ¶ 24. Indeed, as Experian is admittedly aware, collection agencies (the furnisher in this case) furnish information about accounts that are necessarily opened and already delinquent before the open date of the collection account. *Id.* at ¶¶ 25, 26. Thus, Experian admits, and assumes, at least ostensibly, that collection

accounts are already 91 days delinquent as of the reported open date by the collection account furnisher. *Id.* at ¶ 25. This is not borne out by Experian's actual procedures.

Indeed, Midwest informed Experian the Account became delinquent in June 2019, and since this was a collection account, indicated the Account was opened in September 2019. *Id.* at ¶¶ 31, 32. Those two dates are before and after the date of Plaintiff's bankruptcy filing, respectively. *Id*. at ¶ 3. However, Experian's scrub only considered the September 2019 open date of the collection account for purposes of the scrub (as opposed to the first delinquency date Experian knew predated the bankruptcy), and therefore Experian did not accurately report the Account. *Id.* at ¶ 35. Experian has since admitted that Midwest informed Experian that the debt associated with the Account was incurred **before** Plaintiff's bankruptcy petition. *Id.* at ¶ 33. Further, Experian admittedly assumes collection accounts are at least 91 days old yet still failed to accurately report the Account. *Id*. at ¶ 25. Based on Experian's unreasonable procedure of using the September 2019 open date of the collection account, the look-back scrub predictably failed to update the tradeline and resulted in consequent harm to Plaintiff through the harmful inaccuracy. *Id.* at ¶ 35.

## IV. LEGAL ARGUMENT

The elements of an unreasonable procedures claim against a CRA brought pursuant to § 1681e(b) are: "(1) that there was inaccurate information in [Plaintiff's] credit file; (2) that the inaccuracy was due to [a CRA]'s failure to follow reasonable procedures to ensure maximum possible accuracy; (3) that [Plaintiff] suffered actual damages; and (4) that those damages were caused by the inclusion of the inaccurate information." *Salem v. Legal Liaison Serv.*, No. 16-cv-3927, 2019 U.S. Dist. LEXIS 36044, at *11-12 (N.D. Ill. Mar. 6, 2019) (citing *Benson v. Trans Union, LLC*, 387 F. Supp. 2d 834, 840 (N.D. Ill. 2005)).

As set forth below, there is no genuine issue of material fact as to the foregoing, and Experian is liable for failing to follow reasonable procedures as § 1681e(b) of the FCRA requires.

**A. Reporting An Account Discharged In Bankruptcy As In Collection With An Outstanding Balance Is Inaccurate.**

As a threshold matter, Plaintiff must show that something in her credit report was inaccurate, or at least misleading. *Johnson v. Trans Union, LLC*, 524 F. App'x 268, 270 (7th Cir. 2013). Reporting Plaintiff's Account as in collection with an outstanding balance when the Account was discharged in bankruptcy is patently false or at least materially misleading (and either way, inaccurate under the FCRA). Furthermore, the inaccurate Account was included in consumer reports Experian published to third parties.

*i. The Account was not in collection, did not have an outstanding balance, there was no payment past due, and the debt was not incurred in September 2019; it was therefore inaccurate to report the Account as such.*

Plaintiff incurred the debt underlying the Account on or before June 7, 2019, when her service with Peoples Gas concluded—before the date she filed for bankruptcy. *See* SMF at ¶¶ 1, 33. Plaintiff subsequently filed bankruptcy on June 26, 2019. *Id.* at ¶ 3. Her bankruptcy was discharged on October 8, 2019. *Id.* at ¶ 4. When a debtor receives a discharge in Chapter 7 bankruptcy, the debtor is freed from personal liability on all debts that arose before the date of filing of the bankruptcy petition, unless the debt falls under a specific exception. *See* 11 U.S.C. § 727(b); *see also* 11 U.S.C. § 523(a) (listing debts excepted from bankruptcy discharge). As one court (faced with exceedingly similar facts) found, "there is a presumption in favor of discharge, not the other way around." *See Benjamin v. Experian Info. Sols.*, Case No. 1:20-cv-02466-CC-RDC (N.D. Ga. August 4, 2021), ECF No. 71 at p. 26 (report and recommendation) (finding that reporting a balance for a debt incurred before bankruptcy was inaccurate). The Account was accordingly discharged on October 8, 2019.

Following the discharge of the Account, Experian reported the Account as in collection, with an outstanding, past due balance of $370, and as opened in September 2019. *See* SMF at ¶ 6.

This is plainly inaccurate. Plaintiff's bankruptcy discharge eliminated her liability for the debt—yet Experian reported she was still obligated to pay $370 to Midwest. Experian did not indicate the Account was discharged, even though Experian reported other pre-petition accounts in Plaintiff's report as discharged. *Id.* at ¶¶ 7-9. Thus, by reporting Plaintiff's other debts as discharged, except for the Account, and reporting the Account with a balance, the implication of Experian's inaccurate reporting is that Plaintiff was still liable for and delinquent on the (discharged) Account. Further, reporting the Account as "opened" in September 2019 is also misleading, if not false, as the debt was incurred before Plaintiff's bankruptcy. *Id*. at ¶¶ 1, 33.

*ii. Experian published the inaccurate Account tradeline in consumer reports to third-party creditors.*

The Account was inputted into Plaintiff's credit file on or shortly after February 11, 2020. *See* SMF at ¶ 31. The Account was not removed until March 19, 2020, via carbon copy procedure. *Id*. at ¶¶ 38, 39. An Experian consumer disclosure dated May 13, 2020 confirms at least seven hard inquiries within this 37-day period. *Id*. at ¶¶ 40-47. Each of these seven hard inquiries were made in connection with a credit application. A consumer report is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness… which is used or expected to be used… for the purpose of serving as a factor in establishing the consumer's eligibility for credit…" 15 U.S.C. § 1681a(d). Experian provided the information contained in Plaintiff's May 2020 consumer disclosure in response to at least seven hard inquiries. *See* Ex. 17 – Experian's Responses to Plaintiff's Requests for Production, at p. 9, no. 11; Ex. 12 at EXP_LAURA_000009. As the referenced report dated May 13, 2020 confirms, Experian provided the inaccurate Account information in response to at least 7 hard inquiries. *See also Benjamin*, Case No. 1:20-cv-02466-CC-RDC, ECF No. 71 at p. 24-25 (finding presence of hard inquiries sufficient to conclude it "more likely than not" that Experian published inaccurate

account present in plaintiff's credit file).

**B. Experian's Procedures Systematically Generate Predictable, Reasonably Preventable Errors, Rendering Them Unreasonable As A Matter Of Law.**

After establishing an inaccuracy in her consumer report, Plaintiff moves to the second element of her claim under § 1681e(b): that the inaccurate consumer report arose out of Experian's unreasonable procedures. "The reasonableness of a reporting agency's procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004). Here, the record indisputably establishes Experian's procedures are unreasonable and led to the inaccuracies.

*i. Selectively using and ignoring certain account information provided by a data furnisher is unreasonable, especially when Experian is aware that there is substantial risk of introducing inaccuracies into a consumer report in doing so.*

The FCRA does not impose strict liability. "A consumer reporting agency is not liable under the FCRA if it followed reasonable procedures to assure maximum possible accuracy, but nonetheless reported inaccurate information in the consumer's credit report." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (citations omitted). "Reasonable procedures are defined as measures that a reasonably prudent person would follow under the circumstances." *Elkins v. Equifax, Inc.*, 2009 U.S. Dist. LEXIS 18522, at *5 (N.D. Ill. Mar. 9, 2009).

Experian's relevant procedures are not in dispute. When Experian receives notice a consumer obtains a bankruptcy discharge, it initiates an automated procedure, known as a "scrub," that updates tradelines in a consumer's credit file—without any outside input—to reflect the presumed effect of the discharge. *See* SMF at ¶ 13. When the scrub initiates, the scrub goes through a consumer's credit file, checking for accounts that match a certain set of criteria and then updates those accounts to reflect a new status of discharged in bankruptcy. *Id*. at ¶ 15. One criterion the scrub checks is an account's open date. *Id*. If the open date is before the filing date of the

bankruptcy, the scrub will update the account. If the open date is after the filing date of the bankruptcy, the scrub will move on without making changes. *Id.* At relevant times, Experian's procedure was to continue to run scrubs bimonthly for 18 months following the initial scrub. These follow-up scrubs are called "look-back scrubs." *Id.* at ¶¶ 19, 20. When Experian received notice of Plaintiff's bankruptcy discharge in October 2019, it ran an initial scrub. *Id.* at ¶ 30. At the time, the Midwest Account was not present in Plaintiff's credit file—it was not until February 11, 2020, that Midwest (who Experian admittedly considers a less reliable furnisher of information) informed Experian of the Account. Experian added the Account to Plaintiff's credit file that same day. *Id*. at ¶¶ 31, 33. Midwest indicated to Experian the Account's "open date" was in September 2019, which is after the date of Plaintiff's bankruptcy filing, but that the Account went delinquent well before this date (hence being a collection account). *Id.* at ¶¶ 31, 32. The Admin Handbook, a guide to interpreting the Long Admin Report, defines "Open Date" as "the date the account was originally opened." *Id*. at ¶ 23. When Experian initiated a look-back scrub into Plaintiff's credit file, it excluded the Midwest Account, leaving in the inaccurate information without updating the Account to reflect its true status of discharged in bankruptcy, because the reported open date was after the bankruptcy filing.

Experian knew that its procedures were likely to result in inaccuracies, and furthermore knew that the Account was in fact being reported inaccurately. First, Experian knew the Account had been discharged. Experian cannot feign ignorance as to the effect of a discharge in Chapter 7 bankruptcy, when "there is nothing particularly complicated about the effect of a Chapter 7 bankruptcy" and where "Experian's own procedures already recognize the consequences of a general discharge in Chapter 7 bankruptcy." *Benjamin*, Case No. 1:20-cv-02466-CC-RDC, ECF No. 71, at pp. 34-36 (comparing the scrub procedure to the effect of a discharge order). "The

undisputed evidence shows that Experian received notice of Plaintiff's Chapter 7 bankruptcy, and her credit file reveals that Experian knew the Account predated that bankruptcy. Those facts alone are sufficient notice [of an inaccuracy] under the FCRA." *Id*. Second, Experian knew that these types of inaccuracies were likely to occur due to the deficiencies of the scrub procedure.

Here, it is undisputed that Experian received notice of Plaintiff's discharge; it is also undisputed that the date of first delinquency of the Account predated that bankruptcy. It follows that Experian knew the Account was discharged and therefore reported inaccurately. As noted above, when Midwest initially furnished information to Experian regarding the Account in February 2020, Midwest specifically informed Experian that the Account first became delinquent on June 7, 2019—**before** the date Plaintiff filed for bankruptcy. *Id*. at ¶ 32. As further noted above, Experian also assumes collection accounts are at least 91 days' delinquent (as these are accounts that are already delinquent when placed for collection by a creditor). *Id*. at ¶¶ 18, 25. Accordingly, Experian knew the debt associated with the Account was actually incurred before the bankruptcy filing. *Id*. at ¶ 33. The reported "open date" of the collection account was not the date the Account was originally opened—it was the date the creditor placed the Account with Midwest for collection, months after the date the debt had been originally incurred. *Id*. at ¶¶ 2, 31. **Midwest reporting the placement date as the "open date" was intentional.** Collection agencies are **expected** to do this. Standard industry guidelines explicitly instruct collection agencies to report the "open date" of an account as "the date the account was purchased by the debt buyer or placed/assigned to third party collection agency," **not** the date the account was opened with the original creditor. *See* Ex. 15, 2020 Credit Reporting Resource Guide ("CRRG") at p. 10-3.[1] This distinguishes collection

[1] Plaintiff requests judicial notice of the CRRG, a handbook of industry guidelines for reporting consumer information in Metro 2 data format, a format used by all 3 national CRAs, including Experian. The CRRG is produced by the Consumer Data Industry Association, a CRA trade association. Experian is a member.

accounts from other accounts, which report the date the debt was initially incurred as the open date. Experian is also aware of this seemingly erroneous furnisher practice; as Experian admits, it is common practice for collection agencies to report the date of placement for collection as the open date. *See* SMF at ¶¶ 25, 26. Experian even admitted that it **knew** that the "open date" on the Account was not the date the debt was incurred, but the date the account was placed for collection. *Id.* at ¶ 26. The open date is a material criterion used by the scrub—failing to ensure open dates for collection accounts (which Experian knows are reported differently) are properly accounted for by the scrub procedure would be unreasonable and result in predictable and foreseeable error, which happened here.

Despite Experian's ability to identify collection accounts (which are specifically marked by code) and the reported date of first delinquency (which collection agencies always provide), Experian failed to program the scrub to make use of that information. **The scrub procedure does not distinguish collection accounts from other open accounts; therefore, it assumes the reported open date for collection accounts is the same as the date the debt was originally incurred even though Experian knows this is incorrect.** The open date is a critical factor for Experian's scrub; consequently, the accuracy of the open date will affect the accuracy of the scrub's results. Indeed, every time a creditor places an open account for collection after receiving notice of a bankruptcy filing (a common practice in the debt buyer industry), the reporting of the account will never be updated by the scrub even after Experian receives notice of bankruptcy discharge. **Experian knows that its failure to update the scrub would have this result.**

Significantly, Experian has a dispute procedure designed to correct the above-described inaccuracy in apparent anticipation of the exact error that occurred here. According to an Experian employee handbook, if a collection account (1) has an original delinquency date that is prior to a

consumer's bankruptcy petition date (like here) and (2) has an open date after the bankruptcy (like here), Experian is supposed to immediately delete the collection account from a consumer's credit file upon receipt of a consumer dispute—**with no further evidence necessary**. *Id.* at ¶ 27. Experian knows that collection accounts that meet the above criteria are reported inaccurately, yet it inexplicably takes a "wait and see" approach to belatedly correct predictable inaccuracies only after they are noticed by a consumer. This is unquestionably unreasonable and runs counter to the intent of the FCRA. Experian knew its procedures would result in the inaccurate reporting of collection accounts due to the unique way in which collection accounts are reported. As evidenced by the dispute procedure, Experian is even aware of the exact conditions that result in the inaccurate reporting of collection accounts. Here, Experian had notice Plaintiff filed for bankruptcy in late June 2019. *Id.* at ¶ 29. Midwest notified Experian the Account's original delinquency date was in early June, before the bankruptcy. *Id.* at ¶ 32. Experian knew that every deletion condition was met, but did nothing and inaccurately reported that Plaintiff remained liable for the Account well after discharge. Based on Experian's procedures, consumers must suffer harm by Experian's inaccuracies, identify the error(s), and then tell Experian what it already knows before Experian will correct a known inaccuracy.

There is no reasonable basis for the deficiency of the scrub procedure, nor is there any undue burden to fix it. Indeed, Trans Union and Equifax, two other CRAs, were capable of accurately reporting the Account, which "suggests that they have implemented stricter procedures to produce greater accuracy." *Id.* at ¶ 10; *Benjamin*, Case No. 1:20-cv-02466-CC-RDC, ECF No. 71 at p. 37. The remedy for Experian's error was no more than correcting its scrub procedure to account for the unique way collection agencies furnish collection account information to Experian. Experian has already changed the parameters of its scrub procedure in the past; further changes

could not have been unduly burdensome. SMF at ¶ 16. In sum, Midwest furnished all the relevant and requisite information to Experian to prevent the inaccuracy, but Experian's scrub procedure ignored this information. Experian also knew its scrub procedure was faulty and likely to result in inaccuracies, but Experian ignored this as well. Experian's conduct lends itself to the systematic, erroneous inclusion of discharged collection accounts in the credit files of consumers who have gone through a bankruptcy. Defendant's procedures are unreasonable as a matter of law.

**C. Plaintiff Suffered Actual Damages Caused By Experian's Unreasonable Procedures.**

The third and fourth elements of Plaintiff's § 1681e(b) claim require showing damages caused by Defendant's unreasonable procedures. Plaintiff establishes damages as a matter of law. Upon discovery of the inaccuracies, Plaintiff suffered acute emotional distress. Plaintiff suffered further damages by Experian's publication of the inaccurate Account information to multiple creditors, one of which specifically denied Plaintiff credit based on Experian's false reporting.

*i. Plaintiff suffered substantial emotional distress and harm.*

In the Seventh Circuit, an injured party must describe the circumstances of their injury in reasonable detail. *Sarver*, at 971. Plaintiff does so here. At her deposition, Plaintiff testified to her frustration, despair, hopelessness, and her emotional distress following the discovery of the inaccurate information in her Experian credit file. *See* SMF at ¶¶ 52-53. Plaintiff also testified Experian's inaccurate reporting prevented her from getting herself together, moving forward, and starting over. *See* SMF at ¶¶ 52-53, *see also* Ex. 9, Tiffany Laura Dep. at 50:11-51:11. Plaintiff had so much trouble obtaining credit she even spoke to her psychiatrist and to her mother about her frustration and distress. SMF at ¶¶ 52-53.

*ii. Experian published the inaccurate Account information to creditors.*

As previously discussed, the inaccurate Account was published to at least seven creditors during Plaintiff's applications for credit following her bankruptcy discharge. The Eleventh Circuit

has recently held that this type of false reporting of credit information is sufficient injury. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937 (11th Cir. 2021) (reversing entry of summary judgment)"

> Losch needn't show that the false reporting caused his credit score to plummet; the false reporting itself was the injury. For the same reason, Losch needn't show that Experian's false reporting of the mortgage would be worse for his credit score than true reporting of a discharged-in-bankruptcy status; the injury isn't one to his credit score, but rather, the false reporting about his debt.

*Losch*, 995 F.3d 937, 943 (internal citations omitted). Since *Losch*, the United States Supreme Court has likewise held publication of inaccurate information confers an injury-in-fact . *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 210 L.Ed.2d 568, 588 (2021) (consumers suffered harm when agencies published false/misleading information).

In this case, Experian similarly published reports to third parties indicating, falsely, that Plaintiff continued to owe, and was delinquent on, a debt that was discharged. Plaintiff's damages are directly traceable to Experian's publication of inaccurate Account information. Plaintiff applied for auto financing in March 2020. Capital One conducted a hard inquiry of Plaintiff's credit March 11, 2020. SMF at ¶¶ 40, 42. The inaccurate Account was indisputably present in Plaintiff's credit file at that time. *Id.* at ¶ 40. Capital One ultimately denied Plaintiff's credit application, citing information from Plaintiff's Experian report for its denial. *Id.* at ¶ 50. Capital One stated there were too many "delinquent past or present credit obligations." *Id.* at ¶ 49. This description directly matches the indisputably inaccurate Midland Account, as it was the "delinquent past or present credit obligation." This demonstrates the "causal relation between the violation of the statute and the loss of credit" courts recognize establish cognizable claims under the FCRA. *Ruffin-Thompkins*, 422 F.3d at 609. Thus, Plaintiff satisfies the third and fourth elements of her § 1681e(b) claim.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff requests summary judgement regarding Experian's liability for failing to follow reasonable procedures, leaving willfulness and damages to the jury.

Respectfully submitted this 6th day of August 2021

By: */s/Syed H. Hussain*
**PRICE LAW GROUP, APC**
Syed H. Hussain (IL#6331378)
420 E. Waterside Dr. #3004
Chicago, IL 60601
Telephone: (818) 600-5535
Facsimile: (818) 600-5435
E-mail: syed@pricelawgroup.com
*Attorneys for Plaintiff*
*Tiffany Laura*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter.

*/s/ Roxanne Harris*