UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIFFANY LAURA,<br><br>    Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>    Defendant. | **Case No.:** 1:20-cv-01573<br><br>Honorable Sharon Johnson Coleman |

**PLAINTIFF'S LOCAL RULE 56.1(a)(2) STATEMENT OF MATERIAL FACTS IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGEMENT**

Plaintiff Tiffany Laura, pursuant to Local Rule 56.1(a)(2), files her Statement of Material Facts in support of her Motion for Partial Summary Judgement and shows the Court as follows:

1. Plaintiff received service from Peoples Gas between March 5, 2019, and June 7, 2019. *See* Exhibit 1, Midwest Account Records, LAURA-MIDWEST000001.

2. On September 26, 2019, Plaintiff's Peoples Gas account was placed for collection with Midwest Receivable Solutions ("Midwest"), a collection agency. *Id.*

3. On June 26, 2019, Plaintiff filed for a voluntary bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Northern District of Illinois, case number 19-18162. *See* Exhibit 2, Bankruptcy Petition, LAURA000061.

4. Plaintiff was discharged from her Chapter 7 bankruptcy on October 8, 2019. *See* Exhibit 3, Bankruptcy Docket Report.

1

5. On or about February 21, 2020, Plaintiff obtained a consumer disclosure from Experian, Equifax, and Trans Union containing her credit information. *See* Exhibit 4, Experian February 2020 Report; Exhibit 5, Trans Union February 2020 Report; Exhibit 6, Equifax February 2020 Report.

6. Experian was reporting Plaintiff's Midwest Receivable Solutions account (the "Account") as a Collection account with an owed balance of $370 as of February 2020. Experian was also reporting that $370 was past due. Further, Experian indicated that the account was opened in September 2019. *See* Exhibit 4, EXP_LAURA_000002.

7. Experian did not report that the Account was discharged in bankruptcy, or that the Account has a zero-dollar ($0) balance. *Id.*

8. Experian reported Plaintiff's bankruptcy filing and discharge in the public records section of Plaintiff's consumer credit report and reported Plaintiff's other unsecured accounts as "Discharged through Bankruptcy Chapter 7" And/or with a zero-dollar ($0) balance. *See* Exhibit 4, EXP_LAURA_000001-EXP_LAURA_000002

9. Experian was reporting Plaintiff's bankruptcy as discharged in October 2019 and Plaintiff's other bankruptcy debts as discharged. *Id.*

10. Unlike Experian, non-parties Trans Union LLC and Equifax Information Services, LLC reported the Account with no balance owing, no past due balance and indicated that the Account was discharged in bankruptcy. *See* Exhibit 5, LAURA000051; Exhibit 6, LAURA000012.

11. Experian included the Account in Plaintiff's credit file from February 11, 2020 through March 19, 2020. *See* Exhibit 7, 30(b)(6) Deposition of Anna Simmons ("Simmons Dep.") at 39:16-40:10.

12. LexisNexis Risk & Information Analytics Group, Inc. ("LexisNexis") provides daily notice to Experian of consumer bankruptcy information, including the date a bankruptcy is filed and the date the bankruptcy is discharged. *See* Exhibit 10, Experian's Responses to ROGs, Interrogatory No. 4.

13. Experian has a procedure in place, known as a "scrub," to automatically update tradelines in a consumer's credit file to report as included in bankruptcy, upon receipt of notice of discharge. *See* Simmons Dep. at 19:10-20:8, 21:2-8.

14. Scrubs occur weekly after Experian receives notice from LexisNexis that a consumer has received a discharge in bankruptcy. *Id.* at 21:20-22:4.

15. Prior to March 1, 2021, the scrub only updated accounts that had an open date prior to the filing date of the bankruptcy, were 91 days or more delinquent at the time of the scrub, and not in a "finalized" status. *Id.* at 21:9-15.

16. In March 2021, Experian changed this procedure. As of March 1, 2021, Experian now applies the bankruptcy scrub to accounts that have an open date prior to the filing date of the bankruptcy, are only 30 days or more delinquent, and not in a "finalized" status. *See* Exhibit 8, Cave Declaration at ¶ 5.

17. Experian allegedly does not maintain a list identifying all accounts considered "finalized" status. However, Experian states that "finalized" status accounts include account statuses of paid, settled, or refinanced. *See* Simmons Dep. at 25:22-26:20.

18. According to Experian, the status of in collection is not a "finalized" status. *Id*. at 26:7-24. Paradoxically, Experian deems collection accounts as being over 91 days delinquent. *Id*. at 28:1-6.

19. After the discharge, Experian continues to run bankruptcy scrubs on a consumer's report. These are known as "look-back scrubs." *Id.* at 26:25-27:4.

20. Before January 4, 2021, Experian ran look-back scrubs bimonthly for 18 months following a consumer bankruptcy discharge. *See* Ex. 8, Cave Declaration at ¶ 6.

21. In January 2021, Experian changed these procedures. As of January 4, 2021, Experian now runs look-back scrubs monthly for 18 months following a consumer bankruptcy discharge. *Id.*

22. For the purpose of determining whether an account has an open date prior to the filing date of the bankruptcy, the scrub checks the reported open date the furnisher of the account provides. *See* Simmons Dep. at 23:4-7.

23. Experian's Admin Handbook defines the Open Date as "the date the account was originally opened." *See* Ex. 16, Admin Handbook, EXP_LAURA_000145.

24. However, the reported open date may be different from the date a debt is actually incurred by the consumer, as in the case of collection accounts. *See* Simmons Dep. at 23:13-24.

25. Collection agencies commonly furnish accounts to Experian that are incurred and delinquent before the open date of the collection account that the collection agency reports to Experian. *Id.* at 32:24-33:6. Indeed, Experian already assumes collection accounts to be 91 days delinquent as of their reported open date. *Id*. at 28:1-6.

26. Experian knows that accounts furnished by collection agencies are incurred and delinquent before the open date the collection agency reports. Collection agencies also furnish information regarding the date of first delinquency. Midwest reported the date the Account was placed with it for collection was the same as the open date of the Account. *Id.* at 32:24-33:6, 44:23-45:18.

27. If a collection agency account has an original delinquency date that is prior to a consumer's bankruptcy petition date and the account has an open date after the bankruptcy, Experian is supposed to immediately delete the collection account from a consumer's credit file upon receipt of a consumer dispute. *See* Ex. 14, Experian Trade Dispute Guide, EXP_LAURA_000054.

28. However, Experian's scrub does not consider the date a debt is actually incurred for information furnished by collection agencies, and instead relies on the open date the data furnisher reports to Experian, even though these are fundamentally and materially distinct categories of information as reported by collection account furnishers and original creditors. *See* Simmons Dep. at 24:3-18.

29. On or about June 27, 2019, Experian received notice that Plaintiff filed for Chapter 7 bankruptcy. *See* Exhibit 10, Experian's Responses to Plaintiff's Interrogatories ("Experian's ROG Responses"), p. 10.

30. On or about October 9, 2019, Lexis informed Experian that Plaintiff's Chapter 7 bankruptcy had been discharged. Shortly thereafter, Experian initiated its scrub procedure on Plaintiff's credit file. *Id*. at p. 10.

31. On or about February 11, 2020, Midwest released a report providing all the information about the Account at issue to Experian. Thereafter, Experian began to include the Account in Plaintiff's credit file, even though this was already discharged. Midwest informed Experian that the (collection) Account's open date was in September 2019. *See* Simmons Dep. at 32:6-10, 34:13-16, 37:3-5; *see also* Experian's ROG Responses, p. 10.

32. Midwest also indicated to Experian that the Account had become delinquent on June 7, 2019, which is before Plaintiff filed for bankruptcy, and well before the reported open date of the (collection) Account. *See* Simmons Dep. at 33:16-34:12; *see also* Ex. 11, Long Admin Report, EXP_LAURA_000142.

33. Experian admits that it knew that the debt associated with the Account was incurred before the bankruptcy petition. *See* Simmons Dep. at 45:6-22.

34. Experian admits that it considers Midwest to be a less reliable furnisher of information. *Id*. at 34:13-19.

35. Experian's scrub did not update the Account to reflect a status of discharged in bankruptcy because the Account's open date reported by the collection agency furnisher was after the filing date of bankruptcy. *Id*. at 35:12-16.

36. On or about March 18, 2020, Experian received a "carbon copy" transmission from non-party Trans Union LLC ("Trans Union") regarding the Midwest Account. *See* Experian's ROG Responses, p. 10.

37. A carbon copy is a copy of a data furnisher's response to an automated dispute verification form (ACDV) sent to it by a consumer reporting agency. The carbon copy is transmitted

from the consumer reporting agency that handled the ACDV to other consumer reporting agencies. *Id.*

38. The carbon copy that Experian received indicated that Midwest had instructed Trans Union to delete the Midwest Account from Trans Union's file on Plaintiff. *Id*.

39. On or about March 19, 2020, based on the contents of the carbon copy, Experian deleted the Midwest account from Plaintiff's credit file. *See* Simmons Dep. at 37:21-24.

40. There were seven hard inquiries into Plaintiff's credit file between February 11, 2020, and March 19, 2020, the period in which the erroneous Midwest account was present in Plaintiff's Experian credit file. *Id.* at 41:24-42:9.

41. A hard inquiry is a request by a creditor to see information about a consumer in connection to a consumer-initiated action or process such as an application for credit. *See* Exhibit 12, Experian's May 2020 Report, EXP_LAURA_000009.

42. Capital One Auto Finance made a hard inquiry on Plaintiff's credit on March 11, 2020. The reason is "Auto Loan." *Id*.

43. Nowcom/Westlake Financial made two hard inquiries on Plaintiff's credit on March 6, 2020 and March 11, 2020. The reason for both is "Auto Loan." *Id.*

44. Credit Acceptance made a hard inquiry on Plaintiff's credit on March 9, 2020. *Id.*

45. Global Lending Services made a hard inquiry on Plaintiff's credit on March 6, 2020. *Id*.

46. NCCINC/Hawkinson Kia made a hard inquiry on Plaintiff's credit on March 5, 2020. The reason is "Auto Loan." *Id*.

47. Skopos Financial LLC made a hard inquiry on Plaintiff's credit on March 6, 2020. *Id*.

48. Capital One Auto Finance denied Plaintiff's credit application for auto financing in a letter dated March 18, 2020. The denial letter references a credit application dated March 11, 2020. *See* Exhibit 13, Capital One March 2020 Denial Letter, LAURA-CAPITAL ONE000006.

49. Capital One Auto Finance gave two reasons for denying Plaintiff's credit application. The first was "[t]here are too many delinquent past or present credit obligations" and the second was "[c]redit bureau information is missing or unavailable." *Id*.

50. The denial letter from Capital One Auto Finance stated that "[o]ur credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below." Three consumer reporting agencies, including Experian, are listed below. *Id*.

51. In another section of the denial letter titled "Your Credit Score," the letter states the number "461" along with "Source: Experian" and "Date: 3/11/2020." Nothing else is listed in the "Your Credit Score" section. *Id.* at LAURA-CAPITAL ONE000007.

52. As a result of Experian reporting inaccurate information on her credit report, Plaintiff has sustained actual damages, including but not limited to emotional and mental pain, stress, frustration, and anxiety. *See* Exhibit 9, Deposition of Tiffany Laura at 16:10-17:25, 39:5-19, 49:14-51:13, 53:23-54:9, 88:25-89:17, 92:8-93:5, 110:10-25. Plaintiff testified:

> I cannot get anything. I'm to a point where I am trying to get things together for myself. […] I figured that – after I filed the bankruptcy, I felt like I made a good decision, like this was going to be something to help me. But in the end, it's just like, I did it for nothing. And then I'm paying these people all of this money, thousands of dollars, to get this stuff off of me, and then it's still there. And it's emotional because I cannot get the things that I need. These are not wants. These are needs. So it's definitely emotional. And mentally, you know, I'm kind of messed up about it because it's like, why

    am I doing this? Why am I paying for this? […] Once my bankruptcy was discharged, I thought that I was in the clear to start getting myself together. But this account stopped me.

Ex. 9, Deposition of Tiffany Laura at 50:11-51:11.

53. Experian's inaccurate reporting resulted in Plaintiff telling her mother and her psychiatrist about Plaintiff's inability to obtain credit. *See* Tiffany Laura Dep. at 20:7-20; 55:4-12.

Respectfully submitted this 6th day of August 2021.

        By: */s/Syed Hussain*
        Syed H. Hussain, Esq. (IL# 6331378)
        **Price Law Group, APC**
        420 E. Waterside Drive, #3004
        Chicago, IL 60601
        T: (818) 600-5535
        F: (818) 600-5435
        E: syed@pricelawgroup.com
        *Attorneys for Plaintiff*
        *Tiffany Laura*

## CERTIFICATE OF SERVICE

  I hereby certify that on August 6, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter.

                 Price Law Group, APC
                 */s/Roxanne Harris*