UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIFFANY LAURA, | ) |
|       Plaintiff, | ) Case No. 20-cv-01573 ) ) Judge Sharon Johnson Coleman |
| v. | ) ) |
| EXPERIAN INFORMATION SOLUTIONS, INC. | ) ) ) |
|       Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tiffany Laura ("Laura") brings this action against Experian Information Solutions, Inc. ("Experian") for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681(e)(b). The parties filed cross motions for summary judgment. For the reasons stated below, the Court denies Plaintiff's motion [75] and grants in part Defendant's motion [78].

**Background**

The following facts are undisputed unless otherwise noted. Experian operates as a credit reporting agency ("CRA"). It obtains consumer credit information from creditors for distribution in reports. In the event that a consumer's debts are discharged through Chapter 7 bankruptcy (hereinafter "bankruptcy"), Experian updates the consumer's affected accounts to report the debt as discharged in bankruptcy with a zero-dollar balance. This is because bankruptcy shields the individual debtor from collection actions for discharged debts. 11 U.S.C. § 524(a)(2). LexisNexis ("Lexis"), a public records vendor, reports to Experian when a consumer petitions for bankruptcy and when the court enters a discharge order.

Most, but not all, debts incurred before the bankruptcy filing are discharged through bankruptcy. Therefore, upon receipt of a discharge order, Experian presumptively marks some debts as discharged if they meet certain qualifications. Additionally, creditors notify Experian which

accounts have been discharged accounts. Consumers may also report a debt discharge to Experian. Experian litigated the matrix of conditions is uses to assume debts have been discharged through *White v. Experian Info. Sols., Inc.*, No. 05-cv-1073, 2008 WL 11518799 (C.D. Cal. Aug. 19, 2008), which resulted in a national injunction (the "White Order").

Per the White Order, within sixty days of notification of discharge, CRAs must the identify presumptively discharged collection accounts and indicate that they were included in bankruptcy and bear no outstanding balance (the "bankruptcy scrub"). (Dkt. 81-3 at ¶ 3.2(d)(i)-(iii)). If a creditor reports a collection account after the initial scrub, the CRA must run another scrub to determine whether the new account is presumptively discharged. (*Id.* at ¶ 3.2(a)(iv)). The White Order does not specify when the second scrub (also called a "look-back scrub") must be run. Experian implements its bankruptcy scrub within eight days of receipt of the discharge order. (Dkt. 77-10 at 8-9). Experian contends, and Laura disputes, that it also updates collection accounts with a "date open" within 18 months of the bankruptcy filing. (Dkt. 97-1 at ¶ 7). Experian runs its "look-back" scrub every other month for an eighteen-month period. (*Id.*).

On June 26, 2019, Laura filed for bankruptcy. At the time of filing, Laura was delinquent on a debt owed to a Chicago utility company but did not list the debt on her bankruptcy petition. On September 26, 2019, Midwest Receivable Solutions ("Midwest"), a collection agency, opened a collection account for the debt. About two weeks later, Laura received her bankruptcy discharge order. Lexis notified Experian of the discharge one day later and Experian conducted its initial scrub of Laura's consumer credit file shortly thereafter. Four months later, Midwest reported Laura's account (the "Account") to Experian for the first time with an open date of September 2019 and initial delinquency date of June 2019. Midwest did not report that the debt had been discharged through Laura's bankruptcy.

Thereafter, Experian listed the Account in Laura's credit file with a $370 past due balance. It did not indicate that the Account had been discharged in bankruptcy or report a zero-dollar balance. On February 21, 2020, Laura pulled her credit report, which showed the outstanding debt, but she did not dispute the report with Experian. In total, Experian listed the Account on her credit file for less than five weeks. On March 18, 2020, Experian received notice of a credit dispute of the Account from TransUnion, another CRA, and updated the Account. Experian contends, and Laura disputes, that if the Account had remained on Laura's file, Experian's April look-back scrub would have updated it because the Account's open date, September 2019, was within 18 months of the bankruptcy filing.

During the period in which Experian listed the Midwest Account with an outstanding balance, creditors made seven hard inquiries into Laura's credit file. In particular, Capital One Auto Finance ("Capital One") made a hard inquiry into Laura's credit for an auto loan. Laura received a letter from Capital One on March 18, 2020, which stated that Capital One denied her auto loan application because her credit file contained too many delinquent past or present credit obligations, and credit bureau information was missing or unavailable. (Dkt. 77-13). Capital One based its decision in whole or in part from information obtained in reports from Experian and two other CRAs, TransUnion and Equifax. In April 2020, with the aid of a large down payment and a co-signer, Laura received financing for a vehicle. (Dkt. 77-9 at 58:9-13, 59:19-21).

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.

Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). When determining whether a genuine dispute as to any material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Lovelace v. Gibson,* 21 F.4th 481, 483 (7th Cir. 2021). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citation omitted).

**Discussion**

The FCRA provides relief to consumers if a CRA reports inaccurate information on their credit report. 15 U.S.C. § 1681(e)(b). But the FCRA is not a strict liability statute. *Sarver v. Experian Info. Sols., Inc.*, 390 F.3d 969, 971 (7th Cir. 2004) (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)). Given the volume of data CRAs must produce and the complexity of their reporting systems, mistakes understandably occur. *Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020). Therefore, CRAs such as Experian must "'follow reasonable procedures to assure maximum possible accuracy of' information in credit reports." *Chuluunbat v. Experian Info. Sols. Inc.*, 4 F.4th 562, 566 (7th Cir. 2021). Unless it is beyond question, the reasonableness of a CRA's procedures is normally a question for trial. *Sarver*, 390 F.3d at 971 (citing *Crabill v. Trans Union, LLC*, 259 F.3d 662, 663 (7th Cir. 2001)).

<u>Reasonableness of Experian's Procedures</u>

First, Laura argues that Experian failed to implement reasonable procedures to prevent the inaccurate reporting of the Midwest Account in her credit file. Experian contends that its procedures were reasonable as a matter of law for three reasons: (1) it reasonably relied on Midwest's report; (2) its compliance with the White Order is presumptively reasonable; and (3) Experian is not liable for legal inaccuracies.

Because the reasonableness of Experian's procedures is not beyond question, the Court cannot grant summary judgment for either party. First, Midwest's failure to report the Account as

4

discharged does not shield Experian from liability. Experian generally relies on creditors to accurately report the status of consumers' debts. Here, Midwest failed to do so, but Experian was on notice that Laura completed the bankruptcy process and it clearly familiar with the straightforward impact of a Chapter 7 bankruptcy. Experian argues that it was reasonable to not assume the Account had been discharged because there are several exceptions to Chapter 7 bankruptcy which might have applied. But Experian's bankruptcy scrub procedures illustrate that it is not unreasonably burdensome for Experian to parse these limited exceptions, particularly where creditors code the types of accounts that bankruptcy exempts. The Seventh Circuit's rulings in *Henson* and *Sarver* are inapposite. 29 F.3d at 286; 390 F.3d at 972. There, CRAs reported inaccurate information received from reliable sources without notice of inaccuracy. Here, the discharge order put Experian on notice that Laura's accounts may be affected by her bankruptcy.

Next, the Court rejects Experian's argument that updating discharged accounts requires a legal determination that CRAs are not obligated to make. *See generally Chuluunbat*, 4 F.4th at 567–69, and *Denan*, 959 F.3d at 295. While CRAs are not obligated to come to legal conclusions, "[t]aking notice of a previously resolved legal dispute involves some knowledge of the legal impact of court decisions, but does not require the consumer reporting agency to make any legal determinations about the underlying claim." *Chuluunbat*, 4 F.4th at 568. This is not a case where Experian need resolve complex legal issues. Experian can reasonably apply a Chapter 7 bankruptcy discharge order to a consumer's credit file, as evidenced by the comprehensive White Order, under which Experian admits it should have assumed that the bankruptcy discharged the Midwest account. (Dkt. 96 at 10).

Experian also contends that its compliance with the White Order renders its procedures presumptively reasonable. In particular, it argues that its look-back scrub adheres to Rule 3.2(d)(iv) by updating collection accounts with a "date open" within 18 months of the bankruptcy filing date. Experian maintains that this look-back scrub would have detected and updated the Midwest

Account in April 2020, when it was next scheduled to run. The Court need not resolve Laura's objection to Experian's factual support for this assertion, which she argues comes solely from a post-deposition reach-back affidavit. Even if this claim were factually supported and uncontested, the question remains whether it is reasonable to run the look-back scrub every sixty days, as opposed to upon receipt of a new collection account with an initial delinquency date prior to the bankruptcy. Therefore, a genuine dispute of material fact remains as to the reasonableness of Experian's procedures and both parties' motions for summary judgment on this issue are denied.

Damages

The question remains whether Laura can show that she suffered damages as a result of Experian's purported FCRA violation. Laura bears the burden of establishing that she is entitled to damages. *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 608 (7th Cir. 2005). "Actual damages require a causal relation between the statutory violation and the harm suffered by the plaintiff." *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1194 (7th Cir. 2021) (internal quotation omitted); *see also* 15 U.S.C. § 1681o. An FCRA violation may cause pecuniary harm, such as denial of credit, or non-pecuniary harm, such as emotional distress. *Id.* Laura asserts she sustained both.

First, Laura has not met her burden to produce evidence of damages for emotional distress. The Court maintains a "strict standard for a finding of emotional damage 'because they are so easy to manufacture.'" *Sarver*, 390 F.3d at 971 (quoting *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001)). Laura relies on the conclusory assertions that she experienced frustration, despair, and hopelessness after Experian's alleged inaccurate reporting. She offers only her own testimony as proof of her damages. Her "mention" of her credit issues to her psychiatrist does not bolster her claims as she admits that she did not seek psychological treatment for the emotional distress Experian allegedly caused. *See* (Dkt. 77-9 at 56); *see also Bagby v. Experian Info. Sols., Inc.*, 162 Fed.

App'x 600, 605 (7th Cir. 2006). Because Laura cannot explain the circumstances of her injury in reasonable detail, she fails to meet the Seventh Circuit's strict standard. *Sarver*, 390 F.3d at 971.

Next, Laura seeks statutory damages, for which she must show that Experian willfully violated the FCRA. 15 U.S.C. § 1681n. A violation is willful if the company acted in reckless disregard of the FCRA's requirements by "[running] a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69, 127 S. Ct. 2201, 167 L. E. 2d 1045 (2007). Laura does not offer evidence to support a finding that Experian acted with reckless disregard. In response to Experian's motion, Laura argues that Experian knew it maintained inaccurate and unreasonable procedures and was later forced to update its procedures to meet the standard held by other CRAs. Laura offers no factual support for these claims. Therefore, no reasonable finder of fact could conclude that Experian acted in reckless disregard of its obligations under the FCRA.

Finally, Laura maintains that she sustained actual damages when a creditor denied her auto loan application because of Experian's misreporting. In particular, she points to a letter she received from Capital One, which states that it denied her application due to "too many delinquent past or present credit obligations" and missing or unavailable credit bureau information. (Dkt. 77-13). Laura attempts to further connect the dots through unsubstantiated claims and inadmissible hearsay statements. (Dkt. 81 at ¶ 34); (Dkt. 77-9 at 26:4-11). As a result of the denial, Laura states she was not able to finance a vehicle. However, less than four weeks later, she purchased a car. (Dkt. 77-9 at 59:19-21). Though the Midwest Account had since been removed from her Experian credit file, Laura used a cosigner and a large down payment to receive auto financing in April. (*Id.* at 58: 9-13).

Experian argues that the letter is insufficient evidence of a causal connection between Experian's reporting of the Account and the credit denial. The Capital One denial letter does not explicitly link the denial to Experian's reporting of the Account. Rather, the decision "was based in

7

whole or in part" on information obtained from all three CRAs. (Dkt. 77-13). Further, Experian contends that the denial could be a result of the bankruptcy process's negative impact on Laura's credit, as well as her low credit score. (*Id.*). This evidence is clearly insufficient to sustain Laura's motion for summary judgment. However, drawing inferences in favor of the non-moving party, the Court cannot conclude that no reasonable juror could find that Experian's reporting served as one of the reasons for the credit denial. Though Laura's evidence of damages is weak, and the scope of her monetary damages appears narrow, the evidence is sufficient to survive summary judgment as to the Capital One denial only. *See e.g., Hanson v. Experian Info. Sols., Inc.*, 10-cv-2022, 2012 WL 280706, at *4 (N.D. Ill. 2012) (Gettleman, J.).

**Conclusion**

For the foregoing reasons, the Court grants in part and denies in part Defendant's motion for summary judgment [78] and denies Plaintiff's motion [75].

IT IS SO ORDERED.

Date: 3/18/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge